1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   SHENZHEN TECHNOLOGY CO.        )    Case No. 3:12-cv-2188-GPC-BGS
     LTD, a Corporation,            )
12                                  )    **ORDER GRANTING**
                        Plaintiff,  )    **DEFENDANT PROPHET**
13   v.                             )    **EQUITY, LP'S MOTION TO**
                                    )    **DISMISS PLAINTIFF**
14   ALTEC LANSING, LLC, a Delaware )    **SHENZHEN FENDA**
     Limited Liability Company, and )    **TECHNOLOGIES' FRAUD AND**
15   ALTEC LANSING, B.V., a limited )    **NEGLIGENT**
     company,                       )    **MISREPRESENTATION CLAIMS**
16                                  )    **AGAINST DEFENDANT**
                        Defendants. )    **PROPHET EQUITY, LP**
17                                  )
                                    )    **(ECF NO. 52)**
18                                  )
                                    )
19

20        Before the Court is defendant Prophet Equity LP's ("Prophet Equity") Motion

21   to Dismiss plaintiff Shenzhen  Fenda Technology's ("Fenda") claims for fraud and

22   negligent misrepresentation as pled in Fenda's Second Amended Complaint ("SAC").

23   (ECF No. 52.)  Fenda filed an opposition[1] to the Motion to Dismiss, (ECF No. 79), and

24   Prophet Equity filed a reply, (ECF No. 81).  For the reasons set forth below, Prophet

25   Equity's Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND**.

26

27

28
     _____
          [1]The Court notes that Fenda's opposition brief fails to include a table of contents and a table
     of authorities as required by Civil Local Rule 7.1.h.

                                                           3:12-cv-2188-GPC-BGS

## BACKGROUND[2]

Defendant Altec Lansing LLC ("Altec LLC"), a limited liability company organized under Delaware law, develops and sells multimedia audio products. (ECF No. 42, SAC ¶¶ 2, 11.)  Defendant Altec Lansing B.V. ("Altec BV") is a company organized under the laws of the Netherlands and is a wholly owned subsidiary of Altec LLC. (Id. ¶ 3.)  Fenda is a Chinese corporation that manufactures and sells audio and electro-acoustic devices.  (Id. ¶ 1.)

Altec LLC and Fenda began conducting business together in 2003.  (Id. ¶ 11.) Pursuant to memoranda of understanding ("MOUs") and various agreements, Fenda supplied Altec LLC with audio and electro-acoustic products specified by Altec LLC. (Id.)  These MOUs and agreements provided the general terms of agreement between Fenda and Altec LLC with regard to cost, shipment, quality standards, exclusivity, confidentiality, and other matters.  (Id.)

In July 2005, a company called Plantronics, Inc. ("Plantronics") acquired Altec LLC.  (Id. ¶ 12.)  Then, in December 2009, Plantronics sold Altec LLC to its (i.e., Plantronic's) parent company: Audio Technologies Holdings LLC ("Audio Technologies").  (Id. ¶¶ 12-13.)  Audio Technologies is controlled by defendant Prophet Equity, which is a limited partnership organized under the laws of Texas.  (Id. ¶¶ 4, 13.)  Thus, Prophet Equity is an equity owner of Altec LLC.  (Id. ¶ 4.)

"Historically, no matter what company controlled Altec LLC, or what name Altec LLC took, Altec LLC's US office dealt directly with Fenda on all major issues of the transactions."  (Id. ¶ 12.)  The transaction process generally entailed bidding, providing specifications, creating samples, approving the samples, mass production, and finally payment.  (Id.)  If there were any defects, Altec LLC would resolve the dispute with Fenda, and if there were any payment issues, Altec LLC would negotiate directly with Fenda to reset the payment schedule.  (Id.)

---

[2] In reviewing Prophet Equity's Motion to Dismiss, the Court assumes the truth of all factual allegations pled in Fenda's SAC.  See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

1    At some point before it became Altec LLC, Altec LLC conducted business as
2  Altec Lansing Technologies, Inc. ("Altec Lansing").  (Id. ¶ 11.)   Indeed, when
3  Plantronics acquired Altec LLC, Altec LLC was operating as Altec Lansing.  (See id.
4  ¶ 13.)  In October 2009, the management of Altec Lansing approached Fenda, seeking
5  to continue business as a newly formed entity: Altec LLC.  (Id.)  Further, Altec LLC
6  arranged for Altec BV to place orders to Fenda on Altec LLC's behalf.  (Id.)  Any
7  agreements reached between Altec BV and Fenda, however, would require Altec
8  LLC's prior approval.  (Id. ¶ 30.)  Fenda knew Altec BV "was a trading company with
9  no paying capacity without the support of Altec LLC."  (Id. ¶ 60.)
10    From December 2009 through May 2012, Altec LLC continued to have Fenda
11 design, produce, and supply products for Altec LLC.  (Id. ¶ 14.)  Altec LLC, however,
12 "was constantly behind its payment schedule."  (Id.)
13    On April 12, 2011, H.M. Leng ("Leng")–the general manager of Altec LLC and
14 the Far East operation and general manager of Altec BV–sent Fenda a letter, stating
15 "George Stelling ["Stelling"], COO, Managing Director and Co-Founder of Prophet
16 Equity LP will lead Altec LLC as President and CFO" at some point in the future.  (Id.
17 ¶ 15.)  Thereafter, Stelling dealt with Fenda on a frequent basis.  (Id.)
18    From July to August 2011, Stelling, Paul Stacey ("Stacey") (then CFO of Altec
19 LLC), and Pelham Smith ("Smith") (senior principal of Prophet Equity) negotiated
20 directly with Justin Wang ("Wang") (CEO of Fenda) regarding certain defect issues by
21 phone and email.  (Id. ¶ 16.)  Stelling proposed settlement plans on behalf of Altec
22 LLC's board of directors and executive management team in two letters to Wang. (Id.)
23 The proposed settlement plan called for Fenda to address certain defect issues and for
24 Fenda to fund tooling and "NRE cost" for Altec LLC's new products.  (Id.)  Stelling
25 further proposed a trademark license agreement which would allow Fenda to sell
26 certain goods under the Altec LLC brand name.  (Id.)  On August 10, 2011, "Fenda
27 agreed to bear 60% of Altec LLC's Apple IC audit cost."  (Id. ¶ 17.)
28    On September 29, 2011, Keith Tong Tong—the director of yet another company

called Altec Lansing Audio Technologies (Shenzhen) Co., Ltd. ("Altec Shenzhen"), which is a wholly owned subsidiary of Altec BV—scheduled a meeting between Stelling, Stacey, and Brendon Stead ("Stead") (then co-president of Altec LLC) and the management of Fenda in China. (Id. ¶ 18.) On October 10, 2011, Stead and Stacey traveled to China to discuss and negotiate future payment and new order issues with the management of Fenda. (Id.)

In the same month of October 2011, "Fenda urged Altec LLC to pay its balance due." (Id. ¶ 19.) "[T]o get Fenda to continue to supply merchandize [sic], Mr. Stacey promised Fenda that Altec LLC would catch up with the payment schedule and would pay off any overdue payment soon." (Id.) Altec LLC wired Fenda $1 million on November 1, 2011. (Id. ¶ 20.)

On November 3, 2011, Stacey and Stelling proposed to renegotiate the payment terms with Wang and thus arranged a conference call. (Id.) On November 7, 2011, Stacey sent Wang an email before the conference call, confirming that, as of November 3, 2011, Altec LLC owed Fenda $1,398,552.48. (Id.) On the conference call, Stacy, Stelling, and Smith proposed a new, two-part payment plan, whereby 5 weekly payments would be made from November 9 through December 7, 2011, and 9.3 weekly payments would be made thereafter. (Id. ¶ 21.) Stacey, Stelling, and Smith "asked Fenda to support Altec LLC," given the two companies' history of doing business together, and "promised that Altec LLC would make all the payment [sic] as it was turning around its business with its revolutionary wireless products." (Id.) On November 10, 2011, Smith emailed Wang, saying, "the payment will follow next week as proposed. The payment for the week of November 9 is being processed now." (Id.) At no point during these negotiations or subsequent conversations did Altec LLC ever deny its obligation to pay or indicate that Fenda should turn only to Altec BV for payment. (Id.)

After the new payment plan was adopted, "Fenda relied upon the promise of Altec LLC and Prophet Equity, and delivered merchandizes [sic] in large quantity until

1    May[] 2012." (Id. ¶ 22.) Most of the debt currently owed by Altec LLC to Fenda "was

2    incurred after the management of Altec LLC and Prophet Equity established the new

3    payment schedule and committed itself to pay." (Id.) As of May 17, 2012, Altec

4    LLC's total balance due to Fenda was $4,172,274.35, with the last payment of

5    $254,532.26 having been made on April 20, 2012. (Id.) In addition, "there are over

6    three million dollars' worth of materials that were procured by Fenda to fulfill Altec

7    LLC's order." (Id.)

8        In early May 2012, Altec LLC "shut down" Altec BV and it subsidiary Altec

9    Shenzhen, "as the new wireless products of Altec LLC turned out to sell poorly." (Id.

10   ¶ 23.) Allen Soong of Altec LLC informed Fenda on May 15, 2012, that Altec BV's

11   general manager resigned. (Id.) Around the same time, "all the employees of Altec BV

12   and Altec Shenzhen were let go and most of the management of Altec LLC, including

13   Mr. Stelling and Mr. Stacey, were terminated by the board of directors of Altec LLC."

14   (Id.) Raleigh Wilson ("Wilson") became the new president of Altec LLC, and Smith

15   (then senior principal partner of Prophet Equity) became Altec LLC's CFO. (Id.) After

16   this sea change, Altec LLC abruptly changed its position on making payments to

17   Fenda. (Id.)

18       On June 8, 2012, Wang visited Altec LLC's San Diego headquarters and met

19   with Wilson to try and resolve the issues of nonpayment and unused materials. (Id. ¶

20   25.) Upon Wang's request, Wilson obtained the permission of Ross Gatlin (CEO of

21   Prophet Equity) to grant Fenda a license to sell products under Altec LLC's brand

22   name using the materials already procured to fill Altec LLC's prior order. (Id.) As of

23   the time Fenda filed its SAC, however, Altec LLC refused to make full payment. (Id.

24   ¶ 26.) Fenda is still owed $4,172,274.35. (Id.)

25       On Defendants side, "Prophet Equity is engaging in an auction sale to dispose

26   [of] all its assets and inventories of Altec LLC." (Id.) Prophet Equity "has sold Altec

27   LLC's brand, intellectual property, inventory, and other assets for an amount not less

28   than 20 million dollars." (Id.)

1   "During the above process, Altec LLC used Altec BV as its instrumentality to

2   place order[s] from Fenda and other suppliers." (Id. ¶ 27.) "Altec LLC managed and

3   controlled the daily business of Altec BV and other subsidiaries by directing them to

4   make purchase[s] for [Altec LLC] at the terms set and pre-negotiated by [Altec LLC]."

5   (Id.) "Altec BV was represented to Fenda as a division of Altec LLC and Altec LLC

6   was referred to as the US headquarter[s]." (Id.) "Altec BV ha[d] no other business

7   other than assisting Altec LLC to purchase inventory for the latter to resell in the US

8   and globally." (Id.) "There [were] no arm's length transactions between Altec LLC,

9   Altec BV, and any other Altec affiliates." (Id.)

10   Based on the foregoing allegations, Fenda asserts eight causes of action as

11   follows: (1) breach of contract against Altec LLC and Altec BV; (2) breach of implied-

12   in-fact contract against Altec LLC; (3) unjust enrichment against Altec LLC and Altec

13   BV; (4) breach of the implied covenant of good faith and fair dealing against Altec

14   LLC and Altec BV; (5) action for the price under UCC § 2-709 against Altec LLC and

15   Altec BV; (6) account stated against Altec LLC and Altec BV; (7) fraud (false promise)

16   against Altec LLC, Prophet Equity, Smith, and Stelling; and (8) negligent

17   misrepresentation against Altec LLC, Prophet Equity, Smith, and Stelling.

18   Prophet Equity now moves to dismiss Fenda's claims for fraud and negligent

19   misrepresentation as asserted against Prophet Equity.

## STANDARD

21   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

22   sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

23   Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable

24   legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

25   1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes

26   a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively,

27   a complaint may be dismissed where it presents a cognizable legal theory yet fails to

28   plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff

6                                           3:12-cv-2188-GPC-BGS

1   need not give "detailed factual allegations," a plaintiff must plead sufficient facts that,

2   if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v.

3   Twombly, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint

4   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

5   is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

6   Twombly, 550 U.S. at 547). "Determining whether a complaint states a plausible

7   claim for relief will . . . be a context-specific task that requires the reviewing court to

8   draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

9         Where a motion to dismiss is granted, "leave to amend should be granted 'unless

10   the court determines that the allegation of other facts consistent with the challenged

11   pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc.,

12   957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well

13   Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to

14   amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at

15   658.

16   <center>**ANALYSIS**</center>

17         In support of its fraud claim, Fenda alleges that, "[a]t the time when Altec LLC

18   and Fenda negotiated the settlement and payment plan, Mr. Smith and Mr. Stelling had

19   actual knowledge of material facts relating to Altec LLC and Altec BV's financial

20   arrangements and understood that once the market turned worse Altec LLC was not to

21   pay the order placed by Atlec [sic] BV." (SAC ¶ 58.) Fenda claims, Smith and Stelling

22   "misrepresented to Fenda that Altec LLC was to stand behind Altec BV to make the

23   payment," and, therefore, Smith and Stelling "in fact made a promise with no intention

24   to perform it at the time the promise was made." (Id.) Fenda asserts Smith and Stelling

25   made these misrepresentations "knowingly for the purpose of inducing Fenda to design

26   and supply more products to Altec LLC." (Id. ¶ 59.) Fenda claims it "took more orders

27   from Altec LLC and supplied more products at the inducement of Mr. Smith and Mr.

28   Stelling in reliance on the misrepresentations." (Id. ¶ 60.) Then, with no further

1  elaboration, Fenda alleges Smith "was acting as the managing partner of Prophet

2  Equity, therefore his wrongful act may be imputed to Prophet Equity."  (Id. ¶ 62.)

3  Fenda similarly asserts Stelling "was acting as the president of Altec LLC, and

4  therefore his wrongful act should be imputed to Prophet Equity." (Id. ¶ 63.)  In support

5  of its negligent misrepresentation claim, Fenda generally reasserts these allegations,

6  including its conclusory allegations that Smith and Stelling's conduct should be

7  imputed to Prophet Equity.  (Id. ¶¶ 65-70.)

8      Prophet Equity moves to dismiss Fenda's claims for fraud and negligent

9  misrepresentation on the basis that Fenda failed to plead these claims with sufficient

10  particularity.  Prophet Equity further moves to dismiss these claims because Fenda

11  failed to plead facts sufficient to demonstrate that Stelling and/or Smith were acting

12  within the scope of their alleged relationship with Prophet Equity when they allegedly

13  negotiated a settlement and payment plan with Wang.  Prophet Equity further asserts

14  that Fenda's claims fail because "the SAC is littered with statements" that Smith was

15  in fact acting within the scope of his alleged relationship with Altec LLC.

16  **I.      Fraud and Negligent Misrepresentation Claims**

17      A plaintiff must prove the following elements to establish a claim for fraud by

18  false promise: "(1) the defendant represented to the plaintiff that an important fact was

19  true; (2) that representation was false; (3) the defendant knew that the representation

20  was false when the defendant made it, or the defendant made the representation

21  recklessly and without regard for its truth; (4) the defendant intended that the plaintiff

22  rely on the representation; (5) the plaintiff reasonably relied on the representation; (6)

23  the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's

24  representation was a substantial factor in causing that harm to the plaintiff."  Perlas v.

25  GMAC Mortg., LLC, 187 Cal. App. 4th 429, 434 (2010) (quoting Manderville v. PCG

26  & S Grp., Inc., 146 Cal. App. 4th 1486, 1498 (2007)) ( citations omitted).

27      The elements of a negligent misrepresentation claim are: "(1) a misrepresentation

28  of a past or existing material fact, (2) without reasonable ground for believing it to be

1   true, (3) with the intent to induce another's reliance on the fact misrepresented, (4)

2   justifiable reliance on the misrepresentation, and (5) resulting damages." Nat'l Union

3   Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50

4   (2009).

5          Furthermore, "it is well-established in the Ninth Circuit that both claims for

6   fraud and negligent misrepresentation must meet Rule 9(b)'s particularity

7   requirement." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D.

8   Cal. 2003) (citing Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086,

9   1093 (C.D. Cal. 1999)).  Rule 9(b) provides that, "in alleging fraud or mistake, a party

10  must state with particularity the circumstances constituting fraud or mistake."  Thus,

11  "[a]verments of fraud must be accompanied by the who, what, when, where, and how

12  of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th

13  Cir. 2003) (internal quotation marks omitted).

14         "Rule 9(b) does not allow a complaint to merely lump multiple defendants

15  together but require[s] plaintiffs to differentiate their allegations when suing more than

16  one defendant . . . and inform each defendant separately of the allegations surrounding

17  his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65

18  (9th Cir. 2007) (internal quotation marks omitted).  "[T]he plaintiffs must, at a

19  minimum, identify the role of each defendant in the alleged fraudulent scheme." Id.;

20  see also Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)

21  ("While statements of the time, place and nature of the alleged fraudulent activities are

22  sufficient, mere conclusory allegations of fraud are insufficient").

23         **A.     Rule 9(b)**

24         Here, Fenda fails to allege sufficient facts to state fraud and negligent

25  misrepresentation claims against Prophet Equity.  While Fenda alleges "the who, what,

26  when, where, and how" of Smith and Stelling misrepresenting to Fenda on November

27  7, 2011, that Altec LLC would make all payments owed to Fenda, (SAC ¶ 20-21),

28  Fenda does not identify Prophet Equity's role in the November 7, 2011 conference call,

1   state whether Prophet Equity made any representation to Fenda at the conference call,

2   or even allege that Prophet Equity had knowledge of Smith and Stelling's

3   representation.  In any event, Fenda alleges that Smith and Stelling represented that

4   <u>Altec LLC</u>—not Prophet Equity—"would make all the payment [sic] as it was turning

5   around its business with its revolutionary wireless product."  (SAC ¶ 21.)  As such,

6   Fenda has failed to allege that Stelling and Smith's alleged misrepresentation was made

7   on behalf of Prophet Equity.  Because Fenda has not alleged with particularity Prophet

8   Equity's participation in or connection with the alleged misrepresentation, Fenda has

9   failed to sufficiently state claims for fraud and negligent misrepresentation against

10   Prophet Equity under Rule 9(b).

11        **B.    Respondeat Superior**

12        Fenda has further failed to allege facts sufficient to impute Smith's and/or

13   Stelling's conduct to Prophet Equity based on vicarious liability.  Fenda does not plead

14   any facts demonstrating Smith and Stelling were acting within the scope of their

15   employment or relationship with Prophet Equity at the time of their alleged

16   misrepresentation, which is required under California's law of respondeat superior.

17   <u>See</u> <u>Nationwide Mut. Ins. Co. v. Liberatore</u>, 408 F.3d 1158, 1163 (9th Cir.2005) (citing

18   <u>Farmers Ins. Gr. v. Cnty. of Santa Clara</u>, 11 Cal. 4th 992, 1004 (1995)).  In fact, Fenda

19   does not even allege that Stelling had any employment or other potential agency

20   relationship with Prophety Equity as of November 7, 2011; rather, Fenda alleges

21   "Stelling was acting as the president of Altec LLC."  (SAC ¶ 62.)  The only connection

22   alleged between Stelling and Prophet Equity was in the letter Fenda received from

23   H.M. Leng of Altec LLC, identifying Stelling as a co-founder of Prophet Equity and

24   stating that Stelling "will lead Altec LLC as President and CFO."  (<u>Id.</u> ¶ 15.)

25        Because Fenda has not alleged facts demonstrating Smith and Stelling were

26   acting within the scope of their respective relationships with Prophet Equity, Fenda has

27   failed to sufficiently state a claim for fraudulent and negligent misrepresentation

28   against Prophet Equity on the basis of vicarious liability.

3:12-cv-2188-GPC-BGS

1  **II.     Leave to Amend**

2       **A.      Fraud and Negligent Misrepresentation Claims**

3       Finding it possible for Fenda to cure the aforementioned deficiencies, the Court

4  concludes leave to amend should be granted as to Fenda's claims for fraud and

5  negligent misrepresentation against Prophet Equity.

6       **B.      Breach of Fiduciary Duty Claims**

7       In its opposition brief, Fenda asserts Prophet Equity breached its fiduciary duties

8  to Fenda.  (ECF No. 79 at 9-13.)  Fenda argues that, under the trust fund doctrine,

9  "Smith and Stelling, on behalf of Defendant Prophet, had a fiduciary duty to Altec

10 BV's creditors," and, because Smith and Stelling breached that duty to Fenda, Prophet

11 Equity is liable "for dissipating the assets of Altec BV and failing to pay Plaintiff."

12 Fenda also asserts that Prophet Equity breached a duty of good faith and fair dealing

13 because it ultimately controlled Altec BV and did not ensure that Altec BV's debts

14 were paid.  (Id. at 13-14.)  Plaintiff thus requests leave to amend its SAC to—not only

15 cure the deficiencies with regard to its fraud and negligent misrepresentation

16 claims—but to assert two additional claims against Prophet Equity.

17      The Court finds Fenda's request to add two additional claims in its opposition

18 brief to be improper.  First, Fenda has missed the deadline to file a motion to amend its

19 SAC, as the April 8, 2013 Case Management Conference Order provides that "[a]ny

20 motion to join other parties, to amend the pleadings, or to file additional pleadings shall

21 be filed on or before May 8, 2013."  (ECF No. 32 at 1.)  Fenda took no action with

22 regard to adding these new claims until October 25, 2013, when it  filed its opposition

23 to Prophet Equity's Motion to Dismiss.  (See ECF No. 79 at 9-14.)  Furthermore, an

24 opposition brief is not the appropriate vehicle for seeking leave to amend a complaint

25 to add claims beyond those challenged in the motion to dismiss.  See Ruiz v. Laguna,

26 2007 WL 1120350 at *26 (S.D. Cal. Mar. 28, 2007) ("It is axiomatic that the complaint

27 may not be amended by the briefs in opposition to a motion to dismiss.") (citing Car

28 Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984)).  Finally, Fenda

3:12-cv-2188-GPC-BGS

has not shown good cause to extend the deadline to seek leave to amend its SAC, <u>see</u> Fed. R. Civ. P. 16(b)(4), nor excusable neglect for having already missed the deadline, <u>see id.</u> 6(b)(1)(B).  Accordingly, the Court will deny Fenda's request to assert new claims against Prophet Equity for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Prophet Equity's Motion to Dismiss, (ECF No. 52), is **GRANTED**;

2. At this time, Fenda is granted **LEAVE TO AMEND** only its claims for fraud and negligent misrepresentation as asserted against Prophet Equity;

3. Fenda's request to add claims for breach of fiduciary duty is **DENIED**;

4. If Plaintiff wishes to file a third amended complaint, Plaintiff shall do so on or before **December 13, 2013**; and

5. The hearing on Prophet Equity's Motion to Dismiss, currently set for November 22, 2013, is **VACATED**.

DATED:  November 21, 2013

HON. GONZALO P. CURIEL
United States District Judge